**BOREN, OSHER & LUFTMAN LLP**
Paul K. Haines (SBN 248226)
Email: phaines@bollaw.com
Fletcher W. Schmidt (SBN 286462)
Email: fschmidt@bollaw.com
222 N. Sepulveda Blvd., Suite 2222
El Segundo, California 90245
Tel: (310) 322-2220
Fax: (310) 322-2228

**BALTODANO & BALTODANO LLP**
Hernaldo J. Baltodano (SBN 222286)
Email: hjb@bbemploymentlaw.com
Erica Flores Baltodano (SBN 222331)
Email: efb@bbemploymentlaw.com
Roxana E. Khan (SBN 246818)
Email: rek@bbemploymentlaw.com
733 Marsh Street, Suite 110
San Luis Obispo, California 93401
Tel: (805) 322-3412
Fax: (805) 322-3413

Attorneys for Plaintiff, the Classes,
and Aggrieved Employees

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANNDEN BOWER, as an individual, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CYCLE GEAR, INC., a California Corporation; and DOES 1 through 10,<br><br>Defendants. | CASE NO. 3:14-cv-02712-HSG<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Haywood S. Gilliam, Jr.<br>Date:   November 19, 2015<br>Time:   2:00 p.m.<br>Dept.:   15 |

NOTICE IS HEREBY GIVEN that on November 19, 2015, at 2:00 p.m. or as soon thereafter as the matter may be heard in Department 15 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Haywood S. Gilliam Jr., Plaintiff Lannden Bower ("Plaintiff") as an individual and on behalf of all others similarly situated, will and hereby does move this Court for entry of an Order pursuant to Fed. R. Civ. Proc. 23(e) and 29 U.S.C. § 216(b):

1. Preliminarily certifying the proposed California Overtime Subclass, Rest Period Subclass, Meal Period Subclass, Wage Statement Subclass, Waiting Time Subclass, and PAGA Aggrieved Employees Subclass for settlement purposes under Rule 23(e) of the Federal Rules of Civil Procedure;

2. Preliminarily certifying the FLSA Overtime Subclass for settlement purposes under the Fair Labor Standards Act ("FLSA");

3. Preliminarily appointing Lannden Bower as Class Representative for settlement purposes;

4. Preliminarily appointing Paul K. Haines and Fletcher W. Schmidt of Boren, Osher & Luftman LLP and Hernaldo J. Baltodano of Baltodano & Baltodano LLP, as Class Counsel for settlement purposes;

5. Preliminarily approving the class action settlement based upon the terms set forth in the Class Action Settlement Agreement and Stipulation ("Settlement Agreement");

6. Scheduling a final fairness hearing to consider final approval of the Settlement Agreement, entry of a proposed final judgment, Class Counsel's Motion for Reasonable Attorneys' Fees and Costs, and the Class Representative's Incentive Payment;

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

7. Appointing CPT Group, Inc., as the third-party settlement administrator for mailing notices; and

8. Approving the proposed Rule 23 and FLSA Class Notices, and FLSA Opt-In Form, and an order that they be disseminated to the proposed Settlement Class as provided in the Settlement Agreement.

This motion is based on this notice of motion, the attached memorandum of points and authorities, the declarations of Paul K. Haines, Hernaldo J. Baltodano, Fletcher W. Schmidt and exhibits attached thereto, the declaration of Julie Green of CPT Group, Inc. and the exhibits attached thereto, the pleadings and other papers filed in this action, and on any further oral or documentary evidence or argument presented at the time of hearing.


Dated:  October 12, 2015

Respectfully submitted,
BOREN, OSHER & LUFTMAN LLP


By:   __/s/ Paul K. Haines_____
Paul K. Haines, Esq.
Attorneys for Plaintiff, the Classes and
Aggrieved Employees

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................1

II. FACTUAL SUMMARY .......................................................4

    A. Plaintiff's Claims .......................................................4

    B. Defendant Denies Plaintiff's Claims ...............................4

    C. Procedural History And Discovery Completed ..................5

III. THE SETTLEMENT MERITS PRELIMINARY APPROVAL.......................8

    A. The Settlement Is Fair, Adequate, and Reasonable ..................8

        1. The Strength of Plaintiff's Case ....................................8

        2. Risk, Expense, Complexity, and Duration of Further Litigation ...10

        3. Risk of Maintaining Class Action Status .......................11

        4. Amount Offered in Settlement Given Realistic Value of Claims..11

        5. Discovery Completed and the Status of Proceedings ..................15

        6. The Experience and Views of Counsel ...........................16

    B. The Preliminary Approval Standard Is Met ........................16

        1. The Settlement is Within the Range of Possible Approval .....................17

        2. The Settlement Resulted from Serious, Informed and Non-Collusive

           Negotiations ...............................................17

        3. The Settlement is Devoid of Obvious Deficiencies ..............................18

IV. THE SETTLEMENT MERITS CERTIFICATION.......................................21

    A. Rule 23(a)(1) Numerosity Is Satisfied..............................21

    B. Rule 23(a)(2) Commonality Is Satisfied...............................21

    C. Rule 23(a)(3) Typicality Is Satisfied .................................22

    D. Rule 23(a)(4) Adequacy Is Satisfied ................................23

    E. Rule 23(b)(3) Predominance Is Satisfied For Settlement Purposes.........23

V. THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS ............24

VI. CONCLUSION.................................................................24

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

# <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**

*Alonzo v. Maximus, Inc.*, 832 F.Supp.2d 1122 (C.D. Cal. 2011) ..........................12

*Amchem v. Windsor*, 521 U.S. 591 (1997)...............................................................23

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ........24

*Class Plaintiffs v. Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)...........................17

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974)............................................24

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) .......................................8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..............................22, 23

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1988)........................21

*In re Autozone, Inc., Wage and Hour Employment Practices Litigation*

       289 F.R.D. 526 (N.D. Cal. 2012) ....................................................22

*In Re Mego Financial Corp. Securities Litig.*, 213 F.3d 454 (9th Cir. 2000) ........17

*In re Pacific Enterprises Securities Litigation*, 47 F.3d 373 (9th Cir. 1995).........16

*Leyva v. Medline Industries, Inc.*, 716 F.3d 510 (9th Cir. 2013)............................22

*National Rural Tele. Coop. v. DIRECTTV, Inc.*

       221 F.R.D. 523 (C.D. Cal. 2004)....................................................10

*Rodriguez v. West Publishing Corp.,* 563 F.3d 948 (9th Cir. 2003)........................8


**<u>State Cases</u>**

*Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157 (2008)................................13

*Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (2012)....................4

*Dailey v. Sears, Roebuck and Co.*, 214 Cal.App.4th 974 (2013) ..........................14

*Huntington Memorial Hospital v. Superior Court*, 131 Cal.App.4th 893 (2005)....4

*Thurman v. Bayshore Transit Management, Inc.*, 203 Cal.App.4th 1112 (2012)..15


**<u>Federal Statutes and Rules</u>**

Fed. R. Civ. Proc. 23(e)(2)........................................................................................8

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1

29 U.S.C. § 207(e) ...............................................................................4

2

3 **State Statutes and Rules**

4 Cal. Labor Code § 226(e)...................................................................13

5 Cal. Labor Code § 2699(e)(1)............................................................14

6 Cal. Labor Code § 2699(e)(2)............................................................10

7 Cal. Labor Code § 2699(i) .................................................................15

8 Cal. Labor Code § 2699(i) .................................................................20

9

10 **Unpublished Cases**

11 *Alonzo v. Maximus, Inc.*

12      Case No. 2:08-CV-06755-JST (MANx), 2011 WL 2437444

13      (C.D. Cal. June 17, 2011) ...........................................................22

14 *Angeles v. U.S. Airways, Inc.*

15      Case No. 12-05860 CRB, 2013 WL 622032

16      (N.D. Cal. Feb. 19, 2013) ...........................................................13

17 *Casique v. ValleyCrest Landscape Development, Inc.*

18      Case No. CV09-9114 GHK (SSx)

19      (C.D. Cal. November 2, 2011) .....................................................20

20 *Fleming v. Covidien*

21      Case No. ED CV10-01487 RGK (OPx), Dkt No. 236

22      (C.D. Cal. August 12, 2011)........................................................14

23 *Gribble v. Cool Transports Inc.*

24      Case No. CV 06-04863 GAF SHx, 2008 WL 5281665

25      (C.D. Cal. December 15, 2008).....................................................16

26 *In re First Capital Holdings Corp. Financial Products*

27      Case No. MDL No. 901, 1992 WL 226321

28      (C.D. Cal. June 10, 1992) ............................................................17

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

*In re Portal Software, Inc. Securities Litig.*

    Case No. C-03-5138 VRW, 2007 WL 4171201

    (N.D. Cal. Nov. 26, 2007) ...................................................................10

*Jaime v. Standard Parking Corp.*

    Case No. CV08-04407 AHM (Rzx)

    (C.D. Cal. June 22, 2011) ...................................................................20

*Mora v. Bimbo Bakeries USA, Inc.*

    Case No. CV 10-3748 JAK (RZx)

    (C.D. Cal. April 16, 2012) ..................................................................20

*Schiller v. David's Bridal, Inc.*

    Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001

    (E.D. Cal. June 11, 2012) ...................................................................20

*Sorenson v. PetSmart, Inc.*

    Case No. 2:06-CV-02674-JAM-DAD

    (E.D. Cal. December 17, 2008) ...........................................................20

*Williams v. Centerplate, Inc.*

    Case Nos. 11-CV-2159 H-KSC, 12-CV-0008-H-KSC, 2013 WL 4525428

    (S.D. Cal. August 26, 2013) ...............................................................20

*Willner v. Manpower Inc.*

    Case No. C 11-02846 JSW, 2012 WL 1570789

    (N.D. Cal. May 3, 2012).................................................................10, 12


## Other Sources

Manual for Complex Litigation § 30.41 (3rd Ed. 1995)....................................8, 17

4 Newberg et al., Newberg on Class Actions (4th ed. 2013) § 11:24-25 ...............17

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Lannden Bower ("Plaintiff"), individually and on behalf of the proposed Settlement Class, requests that this Court preliminarily approve the Settlement Agreement, entered into by Plaintiff and Defendant Cycle Gear, Inc. ("Defendant"). [1]  In his lawsuit, Plaintiff seeks unpaid overtime wages, meal and rest period premium wages, and derivative statutory waiting time, wage statement, and PAGA penalties.  Plaintiff's claims stem from Defendant's failure to include bonuses, commissions and spiffs in the regular rate of pay for purposes of calculating overtime wages, and allegedly unlawful meal and rest period policies and practices.

Following this Court's conditional certification of Plaintiff's FLSA Overtime Subclass, and the filing of Plaintiff's Motion for Rule 23 Class Certification as to Plaintiff's Rule 23 subclasses, the parties attended mediation with the goal of reaching a global class-wide settlement of the claims of the conditionally certified FLSA Overtime Subclass, in addition to the various putative Rule 23 subclasses.  In addition to the FLSA Overtime Subclass already conditionally certified by the Court, the proposed Settlement calls for certification, for settlement purposes only, of a California Overtime Subclass, Rest Period Subclass, Meal Period Subclass, Wage Statement Subclass, Waiting Time Subclass, and PAGA Aggrieved Employees Subclass, which have been carefully tailored to include only those non-exempt employees who were allegedly injured by the challenged policies and practices within the respective limitations periods

---

[1] The Settlement Agreement is attached as Exhibit 1 to the Declaration of Paul K. Haines, and sets forth the settlement subclass definitions. The proposed Rule 23 and FLSA Class Notices and proposed Opt-In Form are attached as Exhibits A, B and C, respectively, to the Settlement Agreement.

for each claim.[2]  (The FLSA and Rule 23 Classes and Subclasses are collectively referred to herein as the "Settlement Class" and the members as the "Settlement Class members").  According to Defendants' records, the Settlement Class consists of approximately 2,262 total current and former hourly non-exempt employees.

This proposed settlement comes to fruition only after more than a year of contested litigation, extensive formal written discovery, depositions, informal discovery, law and motion practice, the analysis of class-wide payroll and timekeeping data, review of over 20,000 pages of documents produced by Defendant, and two full-day mediation sessions with experienced class action mediators.  Prior to reaching this proposed settlement, the Parties engaged in extensive formal and informal discovery and motion practice.  By way of example, Plaintiff took the depositions of two 30(b)(6) witnesses and two additional former employees of Defendant's, and was deposed himself.  Plaintiff also filed a contested motion for conditional certification, which was granted by the Court, and a contested motion for Rule 23 class certification and a motion to strike declarations submitted by Defendant in opposition to Plaintiff's Motion for Rule 23 class certification, which had not been ruled on by the Court at the time that the parties reached this settlement.   In addition, Plaintiff retained an economist with a Ph.D. to evaluate the daily timekeeping data for all California Class Members, and complete payroll data for all Class Members, including all non-California Class Members produced by Defendant.  Following the parties' second mediation session, held with David Rotman, an experienced and highly respected wage and hour class action mediator, the Parties accepted a mediator's proposal that resolved all of the claims alleged in Plaintiff's operative Complaint on a class-wide basis.

If this settlement is approved, Defendant will pay a Gross Settlement Sum of

---

[2]  Although Plaintiff did not move for Rule 23 class certification as to his Meal Period Subclass, the parties were able to reach a settlement as to Plaintiff's Meal Period Subclass at mediation, and it is therefore included in this proposed, class-wide settlement.

$1,900,000 on a **non-reversionary** basis.  After deductions for proposed court-approved incentive payment to the Class Representative, settlement administration costs, payment to the California Labor and Workforce Development Agency for settlement of Plaintiff's PAGA cause of action, and attorneys' fees and costs, a minimum of $1,225,000 will be distributed to all participating Settlement Class members.  Significantly, all California Settlement Class members and all FLSA Overtime Subclass members who previously opted-in to the lawsuit following this Court's conditional certification order will automatically receive their settlement shares unless they affirmatively opt-out of the settlement.  Only those members of the FLSA Overtime Subclass who have not previously opted-in will be required to submit opt-in forms to claim their settlement shares.

As detailed below, this settlement provides a substantial recovery for the Class Members, and a substantial portion of what Plaintiff's counsel believes would be the best case scenario were the matter to proceed to trial.  The overall average settlement share is estimated at $541.56, and each settlement share will be calculated based on each Settlement Class member's membership as to each Subclass, and their number of workweeks worked during the respective subclass time periods.  Moreover, this lawsuit led to the Defendant paying approximately $122,000 to settlement class members in unpaid overtime wages just months after Plaintiff filed the complaint.  Based on the litigation risks involved, Plaintiff submits that the proposed settlement is well within the range of possible approval.  Moreover, the Settlement Agreement and notice distribution plan are the products of an informed and thoroughly-vetted analysis of the claims, defenses, and procedural challenges, and extensive non-collusive and arm's length settlement negotiations by experienced employment counsel.  Plaintiff respectfully requests that the Court grant this Motion.

///

///

## II.   FACTUAL SUMMARY

### A.   Plaintiff's Claims

Defendant operates a chain of more than 100 retail stores, in California and throughout the United States, selling motorcycle helmets, parts, and accessories. Plaintiff claims that during the relevant time period, Defendant failed to include non-discretionary bonuses, commissions and spiffs in its calculation of the regular rate of pay, resulting in underpaid overtime wages.  *See* 29 U.S.C. § 207(e); *Huntington Memorial Hospital v. Superior Court*, 131 Cal.App.4th 893, 902-903 (2005) (payments included in the calculation of the regular rate are generally consistent under state and federal law).  Moreover, Plaintiff asserts that Defendant was aware of its miscalculation, and yet took no corrective action to remedy the underpayment for a full 20 months, and did not correct its miscalculation until after the initiation of this lawsuit, justifying the imposition of waiting time penalties. Additionally, Plaintiff alleges that Defendant issued inaccurate wage statements, due to the miscalculation of overtime wages, as well as due to Defendant's practice of including meal period premium payments as a component of regular hourly wages during a portion of the class period.

Additionally, Plaintiff asserts that Defendant maintained unlawful meal and rest period policies, that did not authorize and permit employees to take rest periods when working "major fraction" shifts of 6.01 to 7.99 hours and/or 10.01 to 11.99 hours in duration, and did not provide for a timely second meal period prior to the end of the tenth hour of work when an employee worked in excess of ten hours. *See Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1033, 1041 (2012).  Plaintiff is also seeking PAGA civil penalties as a result of all of the foregoing alleged violations.

### B.   Defendant Denies Plaintiff's Claims

Although Defendant conceded that it inadvertently miscalculated the regular rate of pay, Defendant maintains that it voluntarily remedied this miscalculation in

full in 2014, when it sent out retroactive overtime checks to approximately 1,504 employees nationwide, totaling $122,308 in back wages. *See* Docket Entry ("DE") No. 50 at 12: 9-19.  Moreover, Defendant argues that its 2014 retroactive payment actually exceeded what would have been recoverable by law, since it calculated the back wages over a four year period nationwide, despite the fact that the FLSA provides for only a maximum of a three year statutory recovery period. *Id.* Defendant also maintains that it corrected its payroll practices as of August 4, 2014. *Id.* at 7:1.  Accordingly, Defendants also denied liability for waiting time penalties and wage statement penalties, arguing that the potential penalties dwarfed any unpaid wages, and would require individualized inquiries into the constitutionality of enforcing the penalties based on the varying amounts of damages as to each putative class member, as well as whether the individual had suffered an "injury" as a result of an allegedly deficient wage statement. *See id.* at III.D-E.  Defendants also argued that Plaintiff's meal and rest period claims were not suitable for class certification, because Defendant's practices as implemented in their stores varied based on size, staffing and operations, and were generally more liberal than their written company policy suggested. *See generally id.* at §§ II.A-B & III.B.  For these reasons, Defendant claims that it did not engage in any unfair business practices and denies liability under the PAGA.

## C.  <u>Procedural History And Discovery Completed</u>

On June 11, 2014, Plaintiff filed his class, collective and representative action complaint against Defendant in the United States District Court for the Northern District of California, before the Honorable Donna M. Ryu, alleging overtime wage violations under California and Federal law, meal period violations, rest period violations, and derivative wage statement, waiting time, and PAGA penalties.  DE No. 1.  Following the reassignment of the case to the Honorable William H. Orrick, the parties met and conferred, pursuant to Rule 26(f), regarding the claims and anticipated issues in the litigation, the parties reached an agreement

to attend a private class-wide mediation.  *See* DE No. 18.  In connection with mediation, Defendant provided Plaintiff with the complete electronic payroll records for the entire putative class, as well as the daily timekeeping records, also in electronic format, for all California class members.  Declaration of Paul K. Haines ("Haines Decl."), ¶ 15.  Defendant also provided Plaintiff with all applicable written policies, and additional information regarding the makeup of the various subclasses.  *Id.*  In total, Plaintiff reviewed approximately 20,000 pages of documents produced by Defendant.  *Id.*  Plaintiff retained a an economist with a Ph.D. to analyze all of the payroll and timecard data produced by Defendant, and conducted a comprehensive analysis of the data, which included daily timekeeping records for 193,922 shifts worked by California employees, and comprehensive payroll data for all members of the putative class, both inside and outside of California.  *Id.*  Consequently, Plaintiff was able to verify Defendant's calculations with respect to the retroactive catch-up checks sent out in 2014, determine the average rate of pay, and the number of shifts of lengths that would trigger potential meal and/or rest period violations.  *Id.*

The parties attended mediation with Jeff Ross on January 7, 2015.  Haines Decl., ¶ 12.  Despite the parties' efforts however, the parties were unable to reach a resolution.  *Id.*  The case was shortly thereafter reassigned to the Honorable Haywood S. Gilliam.  Following the failed mediation, Plaintiff served, and Defendant responded to, two sets of Requests for Production and two sets of Interrogatories, and Defendant likewise served Plaintiff with Interrogatories and Requests for Production, to which Plaintiff provided formal responses.  *Id.*  Plaintiff then promptly moved for conditional certification of his FLSA Overtime Subclass under the FLSA on March 12, 2015, which was granted by the Court on May 11, 2015.  DE No. 29.  Plaintiff took the depositions of Defendant's two 30(b)(6) witnesses in late April, and deposed two former high-level employees who had worked in Defendant's HR department in mid-June.  Haines Decl., ¶ 12.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1    Plaintiff was also deposed in mid-June.  *Id.*

2         Following the depositions, Plaintiff engaged his retained expert economist to

3    elaborate and refine his analysis based on information disclosed during the

4    depositions, including performing further analysis regarding alleged wage

5    statement violations stemming from Defendant's practice of combining meal

6    period premiums with regular hours on wage statements.  Haines Decl., ¶ 12.

7    Plaintiff's retained expert prepared an expert report that presented his analysis and

8    conclusions, which Plaintiff filed in connection with his Motion for Rule 23 Class

9    Certification, which was filed on June 30, 2015, and which sought certification of

10   Plaintiff's California Overtime, Rest Period, Wage Statement and Waiting Time

11   Subclasses.  *See* DE No. 48.  Following the filing of Defendant's Opposition to

12   Plaintiff's Motion for Rule 23 Class Certification and Plaintiff's Reply Brief in

13   support thereof, as well as a Motion to Strike the declarations submitted by

14   Defendant in connection with its Opposition, the parties reached an agreement to

15   attend a second mediation session with mediator, David Rotman.  *See* Haines

16   Decl., ¶ 16.  The parties requested that the Court withhold ruling on Plaintiff's

17   Motions while the parties attempted to reach a class-wide resolution at this

18   mediation.  *See* DE No. 58.

19        The parties attended mediation with David Rotman in San Francisco on

20   August 11, 2015.  Haines Decl., ¶ 16.  At the conclusion of the mediation, Mr.

21   Rotman made a mediator's proposal that was accepted by the parties.  *Id.*  The

22   parties subsequently executed a binding Memorandum of Understanding outlining

23   the essential terms of the proposed settlement.  *Id.*  Over the following five weeks,

24   the parties negotiated and drafted the long-form Settlement Agreement, Class

25   Notices and FLSA Opt-In Form, which was fully executed on October 12, 2015.

26   *Id.*  Plaintiff now moves this Court for preliminary approval of the proposed class

27   action settlement.

28

III.   **THE SETTLEMENT MERITS PRELIMINARY APPROVAL**

It is the policy of the federal courts to encourage settlement. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989).  Judicial approval of a class action settlement entails a two-step process: (1) an early (preliminary) review by the Court; and (2) a final review after notice has been distributed to the class members for their comment or objections. *See* Manual for Complex Litigation § 30.41 (3rd Ed. 1995).

### A.   The Settlement Is Fair, Adequate, and Reasonable

To receive judicial approval, a proposed class action settlement must be "fair, reasonable, and adequate." *See* Fed. R. Civ. Proc. 23(e)(2).  In making this determination, this Court may consider the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 963 (9th Cir. 2003).  Plaintiff addresses each relevant factor below.[3]

### 1.   The Strength of Plaintiff's Case

Although Plaintiff steadfastly maintains that his claims are meritorious, Plaintiff acknowledges that he faced some risks, both as to certification and on the merits.  Haines Decl., ¶ 14.  Specifically, although Plaintiff believed liability was essentially conceded as to the regular rate miscalculation, because Defendant had made a comprehensive catch-up payment to all affected employees in August

---

[3] Because there are no government participants in the instant lawsuit, Plaintiff has omitted the seventh factor from discussion.  Should the Court grant preliminary approval of the proposed settlement such that notice is given to the Settlement Class members, Plaintiff will address the eighth factor in his motion for final approval.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

2014, Plaintiff understood that there would likely be no unpaid wages recoverable under this theory. *Id.* Relatedly, Plaintiff argued that Defendant's delay in rectifying its miscalculation and distributing the catch-up payment created a strong argument for the imposition of waiting time penalties. *Id.* However, Defendants vehemently argued that the size of the alleged waiting time penalties dwarfed the alleged unpaid wages, and that therefore not only would certification be inappropriate, due to individualized questions of the constitutionality of enforcing the penalty as to each individual class member, but that the Court would exercise its discretion to reduce the penalties, particularly where Defendant had already re-paid the unpaid wages. *Id.* Plaintiff faced similar arguments regarding his wage statement penalty claim, with Defendant arguing that the $4,000 penalty per employee was grossly disproportionate to any alleged "injury" suffered, if any, and Defendant argued that this could not only justify a reduction or non-imposition of the penalties, but could also prevent certification based on individualized constitutionality questions. *Id.*

With respect to Plaintiff's rest period claim, Defendant steadfastly maintained that Plaintiff's theory improperly focused on Defendant's written rest period policy while ignoring evidence regarding Defendant's practices as enforced in its stores, which Defendant argued provided all required rest periods to non-exempt employees. *See* DE No. 50 at § III.B. Defendant therefore argued that not only was Plaintiff's theory improper for certification, but that even if Plaintiff's claim was certified, merits-based discovery would not support a finding of any widespread violations. Haines Decl., ¶ 14. With respect to Plaintiff's meal period claim, evidence disclosed during Defendant's 30(b)(6) deposition revealed that Defendant maintained a policy of automatically paying missed meal period premiums when a meal period was recorded even a minute late, short, or not at all, and after conducting confirmatory analysis as to this contention, Plaintiff did not move for certification of his meal period claim on this basis. *See* DE No. 48 at 8:9-

9

1   21.  Defendant also asserted that any civil PAGA penalties were unconstitutional

2   because they were confiscatory since the penalties sought were grossly

3   disproportionate to the actual amount of alleged unpaid wages owed. *See, e.g.,*

4   *Willner v. Manpower Inc.*, Case No. C 11-02846 JSW, 2012 WL 1570789 at *7

5   (N.D. Cal. May 3, 2012) ("The Court retains discretion over awards under a PAGA

6   claim and may 'award a lesser amount than the maximum civil penalty amount

7   specified [under PAGA] if, based on the facts and circumstances of the particular

8   case, to do otherwise would result in an award that is unjust, arbitrary and

9   oppressive, or confiscatory.'") (citing Cal. Lab. Code § 2699(e)(2));  Haines Decl.,

10  ¶ 14.

11        In short, Plaintiff's ability to certify his Rule 23 claims, and achieve a

12  maximum recovery as to each theory was far from guaranteed.  Indeed, "[i]n most

13  situations, unless the settlement is clearly inadequate, its acceptance and approval

14  are preferable to lengthy and expensive litigation with uncertain results." *National*

15  *Rural Tele. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)

16  (internal quotations omitted).  Thus, this factor supports preliminary approval.

         **2.    Risk, Expense, Complexity, and Duration of Further**
              **Litigation**

17        This factor also weighs in favor of preliminary approval.  Although the

18  parties had engaged in extensive discovery, informal class-wide data analysis, and

19  law and motion practice, the parties had not yet completed formal written or

20  deposition discovery, particularly as to class-wide damages discovery, which had

21  the potential to be expensive and time consuming.  Haines Decl., ¶ 13.  Plaintiff

22  faced the possibility of a motion for decertification being brought by Defendant as

23  to Plaintiff's FLSA Overtime Subclass, as well as the prospect of appeals in the

24  wake of the Court's ruling on class certification, or a disputed summary judgment

25  ruling.  *Id.*  As a result, the parties would incur considerably more attorneys' fees

26  and costs through trial.  This settlement avoids those risks and the accompanying

27  expense. *See, e.g., In re Portal Software, Inc. Securities Litig.*, Case No. C-03-

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

5138 VRW, 2007 WL 4171201 at *3 (N.D. Cal. Nov. 26, 2007) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement").

### 3.   Risk of Maintaining Class Action Status

Although this Court had already conditionally certified Plaintiff's FLSA Overtime Subclass at the time that this Settlement was reached, Defendant had not yet had an opportunity to move to decertify Plaintiff's FLSA Overtime Subclass, and the Court had not yet ruled on Plaintiff's Motion for Rule 23 Class Certification at the time the parties reached this proposed class-wide resolution. Had the Court certified any of Plaintiff's Rule 23 Subclasses, Plaintiff still faced the risk that Defendant would seek to decertify these subclasses after additional class-wide discovery.  Haines Decl., ¶ 14.  Absent settlement, there was a risk that there would not be a certified class at the time of trial.  This factor supports preliminary approval.

### 4.   Amount Offered in Settlement Given Realistic Value of Claims

The proposed settlement provides a substantial monetary recovery for the Settlement Class that accurately reflects the risks and defenses faced by Plaintiff. In light of the retroactive catch-up payment made by Defendant in 2014, and concurrent correction of their regular rate calculations moving forward, Plaintiff determined that Defendant had paid back all unpaid wages, inclusive of interest, owed to the members of the FLSA Overtime Subclass and California Overtime Subclass.  Haines Decl., ¶ 18.   Therefore, Plaintiff determined that the only recovery that would potentially be available on this theory was liquidated damages under the FLSA, in an amount equal to the unpaid wages, or approximately $122,000.  *Id.*  However, because this amount included unpaid wages for a four-year period, as opposed to a three-year period available under the FLSA, Plaintiff discounted this amount by 25%, and because the Court could exercise its discretion to not award liquidated damages, Plaintiff further discounted the potential recovery

11

on this theory by 50%, for a total of $45,750. *Id.*

Regarding Plaintiff's claim for waiting time penalties as a result of Defendant's delay in distributing the retroactive catch-up payments, Plaintiff's analysis of the payroll data provided by Defendant reflected 259 individuals in the Waiting Time Penalty Subclass.  Haines Decl., ¶ 19.  Based on an hourly rate of pay in California of $11.37, Plaintiff estimated the average waiting time penalty per former employee to be approximately $2,729 ($11.37 * 8 hours * 30 days).  *Id*. Therefore, Plaintiff estimated Defendant's maximum potential waiting time penalty exposure at $706,759 ($2,729 * 259 individuals).  *Id*.  Plaintiff maintains that this claim has a high probability of certification and success on the merits.  *Id.* However, Plaintiff believed that the Court could potentially find that Defendant's violation was not willful, and therefore, could use this as a basis to reduce or deny the imposition of waiting time penalties altogether, especially given the very small underpayment in wages compared to total penalties recoverable. *See, e.g., Willner v. Manpower Inc.*, Case No. C 11-02846 JSW, 2012 WL 1570789 at *3 (N.D. Cal. May 3, 2012) (dismissing waiting time claim for lack of wilfulness); *Alonzo v. Maximus, Inc.*, 832 F.Supp.2d 1122, 1133-34 (C.D. Cal. 2011) (finding no liability for waiting time penalties based on the existence of a "good faith dispute"); Haines Decl., ¶ 19.  Accordingly, Plaintiff discounted the waiting time claim for purposes of settlement, by 10% for a risk of non-certification, and by 30% for a risk of reduction or dismissal on the merits, to arrive at an expected recovery of approximately $445,258.  Haines Decl., ¶ 19.

With respect to the Wage Statement Subclass, Plaintiff's analysis of the payroll data produced by Defendant revealed 5,056 unique wage statements that contained either: (a) a meal period premium that was combined with regular hours, and/or (b) an incorrect overtime rate due to the improper exclusion of a spiff from the regular rate.  Haines Decl., ¶ 20.  Plaintiff therefore calculated Defendant's maximum exposure at $252,800 (5,056 violations * $50 "initial" violation rate).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

*See* Labor Code § 226(e) (providing for $50 penalty for "initial" violations); *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1207 (2008) (finding that the "initial" violation rate applies until the employer has been notified that it is violating a Labor Code provision); Haines Decl., ¶ 20.  Like his waiting time penalty claim, Plaintiff maintains that he has a high likelihood of certification and recovery on the merits as to this claim, but recognizes that certification was not guaranteed, and the Court could in its discretion reduce the penalties or decline to impose any penalties at all.  *See, e.g., Angeles v. U.S. Airways, Inc.*, No. C 12-05860 CRB, 2013 WL 622032 at *10 (N.D. Cal. Feb. 19, 2013) (dismissing wage statement claim for lack of injury); Haines Decl., ¶ 20.  Plaintiff therefore discounted this claim by 10% for the probability of losing at certification, and by 20% on the merits, for an expected recovery on this claim of $182,016.  Haines Decl., ¶ 20.

Regarding Plaintiff's claim for failure to provide all rest periods, Plaintiff's analysis of all the class-wide data reflected that there were approximately 101,355 shifts worked of a duration that would trigger a potential rest period violation (i.e. "major fraction" shifts of 6.01 to 7.99 or 10.01 to 11.99 hours in duration).  Haines Decl., ¶ 21.  Using an average hourly rate of pay of $11.37, Plaintiff therefore calculated a maximum total exposure on this claim of $1,152,406 (101,355 violations * $11.37 penalty).  Haines Decl., ¶ 21.  However, this valuation assumes that each "major fraction" shift triggers a rest period penalty, while Defendant argued that even though the policy lacked the requisite language, class members were in fact still being authorized and permitted to take their rest periods in practice.  *Id.*  Plaintiff realized that there was risk of non-certification of this issue, because rest periods were not recorded, and therefore individualized inquiries could potentially preclude certification as to whether a rest period was or was not in fact authorized and permitted in each specific instance.  *Id.*  As a result, Plaintiff discounted his potential maximum exposure by 75% for a risk of non-certification

and by an additional 45% for a risk of being unsuccessful on the merits, to arrive at $158,456. *See, e.g.*, *Dailey v. Sears, Roebuck and Co.*, 214 Cal.App.4th 974, 1000 (2013) (affirming denial of certification of rest period claim); Haines Decl., ¶ 21.

With respect to Plaintiff's meal period violation claim, Defendants produced evidence showing that its payroll system was programmed to automatically pay missed meal period premiums whenever a meal period was recorded even just one minute late or short. *See* DE No. 48 at 8:9-21. Plaintiff's analysis of the payroll and timekeeping records corroborated Defendant's contention, and Plaintiff therefore did not move for Rule 23 class certification as to a meal period claim. Haines Decl., ¶ 22. However, for purposes of mediation, Plaintiff valued this claim as follows: 7,986 shifts worked in excess of 10 hours that did not reflect a timely clock-out for a 30 minute meal period * $11.37 penalty = $90,800.82 in maximum exposure (assuming that no meal period premiums were paid). *Id.* Then, Plaintiff discounted that amount by 75% for a risk of non-certification, based on Defendant's argument that Plaintiff never worked a shift in excess of 10 hours, and was therefore not typical, and by 85% on the merits, in light of the evidence that meal period premiums were automatically paid when recorded meal periods were either not timely, or shorter than 30 minutes, to arrive at $3,405. *Id.*

Regarding the PAGA Aggrieved Employee Subclass, Plaintiff's analysis of the class-wide payroll data revealed that there were 5,056 pay periods in which at least one alleged violation occurred during the one-year PAGA limitations period. Haines Decl., ¶ 23. Therefore, applying the "initial" violation rate of $100 per Labor Code section 2699(e)(2), Defendants' maximum potential exposure under PAGA would be $505,600. *Id.* However, Plaintiff recognized that the Court had discretion to not award any civil penalties under PAGA, or could drastically reduce the award of PAGA penalties as duplicative. *See* Cal. Labor Code § 2699(e)(1); *Fleming v. Covidien,* Case No. ED CV10-01487 RGK (OPx), Dkt No. 236 at p. 5, (C.D. Cal. August 12, 2011) (reducing PAGA penalties from $2.8 million to

$500,000); *Thurman v. Bayshore Transit Management, Inc.*, 203 Cal.App.4th 1112, 1135 (2012) (affirming trial court's finding that awarding the maximum PAGA penalties would be unjust); Haines Decl., ¶ 23.  Based on these risks, Plaintiff believes that the chances of not moving forward on this claim on a collective basis or losing on the merits warrants reducing the value of this claim by 25%.  Haines Decl., ¶ 23.  Further, Plaintiff believes it is reasonable to account for the risk that the Court would reduce PAGA civil penalties even if Plaintiff were successful in establishing this claim, by further discounting the value of this claim by 50%, and as such, Plaintiff believes an expected recovery for this subclass was approximately $189,600, of which 75% would be paid to the California Labor & Workforce Development Agency. *Id.*; Cal. Labor Code § 2699(i).

Using these estimated figures, and after discounting the claims for non-certification and/or losing on the merits as explained above, Plaintiff predicted that his realistic total recovery for the Class would be approximately $1,024,485. Haines Decl., ¶ 24.  The estimated **Net Settlement Sum** of $1,225,000 therefore represents nearly 120% of Plaintiff's reasonably forecasted recovery for the Settlement Class, exclusive of any attorneys' fees and costs, incentive payment, payment to the LWDA for PAGA, and administration costs.  *Id.*  Given the litigation risks involved, the proposed settlement is well within the realm of being fair, reasonable, and adequate.

## 5.   Discovery Completed and the Status of Proceedings

The parties engaged in extensive discovery, research and investigation and analysis of class-wide discovery prior to reaching the proposed settlement. *See* Section II(C), *supra*.  In addition to being deposed and formally responding to Interrogatories and Requests for Production himself, Plaintiff served Defendant with two sets of Interrogatories and two sets of Requests for Production, deposed two 30(b)(6) witnesses produced by Defendant, as well as two former employees of Defendant who were intimately involved in Defendant's payroll practices during

the relevant time period.  Haines Decl., ¶ 12.  Defendant also produced all policies regarding provision of rest and meal periods, incentive compensation, and overtime practices, and complete daily timekeeping records for all California employees. Haines Decl., ¶ 15.  In total, Defendant produced approximately 20,000 pages of documents which Plaintiff reviewed and analyzed.  *Id.*  Defendant also produced extensive nationwide payroll data for the entire putative class.  *Id.* Plaintiff had the payroll and timekeeping data statistically analyzed by his retained expert, an economist holding a Ph.D.  *Id.*  It was only after the exchange of this data and information that the parties participated in their second full-day mediation session in August, 2015 and reached this proposed Settlement.  *See* Haines Decl., ¶¶ 12-16.   Moreover, the parties engaged in law and motion practice, including a contested motion for conditional certification under the FLSA and a Rule 23 certification motion which was fully briefed at the time of mediation.

### 6. The Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995).  Plaintiff is represented by experienced wage and hour class action counsel who pressed Plaintiff's claims forward against a large employer who retained experienced defense counsel. *See* Haines Decl., ¶¶ 1-10; Declaration of Hernaldo J. Baltodano ("Baltodano Decl."), ¶¶ 1-12; Declaration of Fletcher W. Schmidt ("Schmidt Decl."), ¶¶ 1-9.  Therefore, this factor strongly supports preliminary approval. *See, e.g., Gribble v. Cool Transports Inc.*, No. CV 06-04863 GAF SHx, 2008 WL 5281665 at *9 (C.D. Cal. December 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### B. The Preliminary Approval Standard Is Met

At this stage, the Court can grant preliminary approval of the settlement and

direct that notice be given if the proposed settlement (1) falls within the range of possible approval; (2) appears to be the product of serious, informed and non-collusive negotiations; and (3) has no obvious deficiencies. *See* Manual for Complex Litigation (3d ed. 1995) § 30.41; 4 Newberg et al., Newberg on Class Actions (4th ed. 2013) § 11:24-25.   The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *See Class Plaintiffs v. Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992).

## 1.   <u>The Settlement is Within the Range of Possible Approval</u>

Plaintiff submits that the proposed settlement is within the range of possible approval, such that notice should be provided to the Settlement Class so that they can consider the settlement. *See In Re Mego Financial Corp. Securities Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("the Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate").  The Court will have the opportunity to again assess the reasonableness of the settlement at the final approval stage.

## 2.   <u>The Settlement Resulted from Serious, Informed and Non-Collusive Negotiations</u>

This proposed settlement is the result of hard-fought litigation and extensive arm's-length negotiations by counsel and is, therefore, entitled to an initial presumption of fairness. *See In re First Capital Holdings Corp. Financial Products*, Case No. MDL No. 901, 1992 WL 226321 at *2 (C.D. Cal. June 10, 1992) ("Approval of the settlement is discretionary with the court, but there is typically an initial presumption of fairness where the settlement was negotiated at arm's length.").  As discussed above, Plaintiff thoroughly vetted the claims at issue, conducted fact investigation and extensive legal research and analysis, engaged in formal and deposition discovery, reviewed and analyzed over 20,000 pages of documents, certified a nationwide FLSA class, fully briefed his Rule 23 class certification motion, reviewed and analyzed an extensive amount of payroll

and timekeeping data, and retained a statistical economist to conduct a statistical analysis of the data to arrive at his estimated damages figures. *See* Haines Decl., ¶¶ 12-16.  The parties reached this settlement only after two full-day mediation sessions separated by the filing and granting of Plaintiff's Motion for Conditional Certification and the filing of Plaintiff's Motion for Rule 23 Class Certification. *Id.*  The parties each provided the mediator with detailed legal positions and exposure analyses, outlining their views of the strengths and weaknesses of each claim and potential defense. Haines Decl., ¶ 15.  Plaintiff's mediation brief included detailed calculations of the damages he would expect the classes to be awarded were he to prevail on each claim.  *Id.*  Even after the parties had come to an initial agreement, both sides continued to negotiate the finer points of the proposed settlement for several weeks.  *Id.*

### 3.   The Settlement is Devoid of Obvious Deficiencies

If the Court preliminarily approves this settlement, Defendants will pay a Gross Settlement Sum ("GSS") of $1,900,000[4] which shall be distributed to the Settlement Classes on a **non-reversionary** basis.  Moreover, only those members of the FLSA Overtime Subclass who are not also members of any of the Rule 23 Subclasses and did not previously opt-in to the FLSA Overtime Subclass will be required to affirmatively opt-in to the Settlement to claim their shares of the Settlement.  The principal terms of the proposed settlement agreement are summarized below:

| | |
|---|---|
| Gross Settlement Sum: | $1,900,000 |
| Minus Court-approved attorney's fees (up to): | $570,000 |
| Minus Court-approved verified costs (up to): | $50,000 |
| Minus Court-approved incentive payment: | $10,000 |
| Minus PAGA allocation to LWDA: | $112,500 |
| Minus settlement administration costs: | $45,000 |
| Net Settlement Sum ("NSS"): | **$1,225,000** |

After deducting amounts for court-approved Class Representative incentive

---

[4]  Additionally, although it is not represented in the GSS, Defendant paid a total of $122,000 to approximately 1,400 employees in August, 2014.  *See* Haines Decl., ¶ 24.

payment, costs of settlement administration, allocation to the LWDA, and approved attorneys' fees and costs, the settlement requires Defendants to pay a NSS of **at least** $1,225,000 to all members of the Settlement Classes.  Haines Decl., ¶ 25.  Any amounts requested for attorneys' fees, litigation and administration costs and incentive payments which are not approved by the Court will remain part of the NSS and will be distributed to the Class.  *Id.*

The NSS will be allocated to the Settlement Class as follows: 40.0% of the NSS will be allocated to all participating members of the Waiting Time Penalty Subclass, with each member taking a pro-rata share.  *See* Settlement Agreement at ¶ 35(f).  This allocation is estimated at approximately $490,000.  25.0% of the NSS will be allocated to all members of the Wage Statement Subclass, with each member taking a proportional share based on the number of pay periods each member worked from June 11, 2013 to the date of preliminary approval.  *Id.*  This allocation is estimated at approximately $306,250.  15.0% of the NSS will be allocated to the Rest Period Subclass members, with each participating member taking a proportional share based on the number of weeks worked from June 11, 2010 to the date of preliminary approval.  *Id.*  This allocation is estimated at approximately $183,750.  5.0% of the NSS will be allocated to the California Overtime Subclass, with each participating member taking a proportional share based on the number of weeks worked from June 11, 2010 to the date of preliminary approval.  *Id.*  The FLSA Overtime Subclass, California Overtime Subclass, and Meal Period Subclass will each be allocated 5.0% of the NSS, with each member taking a proportional share based on the number of weeks worked from June 11, 2010 to the date of preliminary approval.  *Id.*  These allocations are estimated at $61,250.  *Id.*  Finally, 5.0% of the NSS will be allocated to the PAGA Aggrieved Employee Subclass, on a pro-rata basis, with each member taking an equal share.  *Id.*  This allocation is estimated at $61,250, and a $112,500 payment will be separately made to the LWDA as the LWDA's 75% share of the PAGA

19

award.  *Id.*; *See also* Cal. Labor Code § 2699(i).   These allocations have all been calculated to mirror the expected recoveries as to each subclass, as described in Section III.A.4, *supra.*

The average payment to Class members who performed work in California is estimated at approximately $1,284.49 and the average payment to the FLSA Overtime Subclass (assuming a 50% opt-in rate) is valued at $90.34.  Haines Decl., ¶ 26.  Each individual's share will vary depending on which subclasses they qualify for, and their unique criteria as to each Subclass allocation formula.  This average recovery per class member is on par with other wage and hour class action settlements involving non-exempt employees.[5] Any estimated settlement shares allocated to members who request exclusion from the Settlement will simply remain as part of the NSS for distribution to the participating class members.  Haines Decl., ¶ 26.  Class members will have 180 days from the date the settlement administrator mails the settlement checks to cash their checks.  *Id.*  Amounts represented by checks which are not cashed within the 180 day limit will escheat to the State of California Controller's office.  *Id.*

Moreover, the proposed incentive payment to the Class Representative of $10,000 does not bestow preferential treatment, as will be addressed in the motion for approval of attorney's fees, costs and class representative incentive payment.  Proposed Class Counsel will also file a separate motion for approval of attorney's fees not to exceed 30% of the GSS for all past and future attorneys' fees necessary

---

[5] *See, e.g., Schiller v. David's Bridal, Inc.*, Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at *17 (E.D. Cal. June 11, 2012); *Casique v. ValleyCrest Landscape Development, Inc.*, Case No. CV09-9114 GHK (SSx) (C.D. Cal. November 2, 2011); *Jaime v. Standard Parking Corp.*, Case No. CV08-04407 AHM (Rzx) (C.D. Cal. June 22, 2011); *Mora v. Bimbo Bakeries USA, Inc.*, Case No. CV 10-3748 JAK (RZx) (C.D. Cal. April 16, 2012); *Sorenson v. PetSmart, Inc.,* Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. December 17, 2008); *Williams v. Centerplate, Inc.*, Case Nos. 11-CV-2159 H-KSC, 12-CV-0008-H-KSC, 2013 WL 4525428 at *4 (S.D. Cal. August 26, 2013).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

to prosecute, settle and administer the litigation and this proposed Settlement,[6] and for verified litigation costs not to exceed $50,000.00.  Based on the substantial hours that Class Counsel has dedicated to the prosecution of this action, including achieving certification of a nationwide FLSA class and fully briefing his Motion for Rule 23 Class Certification, in addition to the other litigation activities described herein, and including the estimated hours that will be required to guide the action through final approval, Class Counsel submit that the proposed award of 30% will only meet, or be less than the anticipated lodestar.  Haines Decl., ¶ 27. Moreover, Class Counsel's efforts in this lawsuit resulted in more than 1,400 employees receiving retroactive catch-up payments in August, 2014, totaling approximately $122,000, which is not reflected in the GSS.  *See* Haines Decl., ¶ 24.  Because the proposed settlement is devoid of obvious deficiencies, this final factor also supports preliminary approval.

## IV.   THE SETTLEMENT MERITS CERTIFICATION

### A.   Rule 23(a)(1) Numerosity Is Satisfied

Numerosity is satisfied because there are approximately 2,262 current and former non-exempt employees in the proposed Settlement Class, and no Subclass has fewer than 259 members. *See Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); Haines Decl., ¶ 17.

### B.   Rule 23(a)(2) Commonality Is Satisfied

Plaintiff maintains that the Settlement Class satisfies commonality because there are questions of fact and law arising from the proposed Class Representative's employment with Defendant that are common to the members of each Subclass, such as Defendant's delay in rectifying its miscalculation of the

---

[6] Although requests for attorney's fees amounting to 33 and 1/3% of a common fund are commonly approved in wage and hour class action settlements, Plaintiff's counsel will only request 30%, which Plaintiff's counsel represents will be an amount approximately equal to or less than their lodestar through final approval.   Class counsel will submit detailed billing records to the Court so that it can conduct a lodestar cross-check.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

regular rate of pay, allegedly defective wage statements, and allegedly unlawful meal and rest period policies, all of which Plaintiff contends arise from a common core of salient facts. *See, e.g., In re Autozone, Inc., Wage and Hour Employment Practices Litigation*, 289 F.R.D. 526, 534 (N.D. Cal. 2012) (certifying rest period claim, because the claim was "based entirely on the legality of Defendant's uniform written rest break policy"); *Leyva v. Medline Industries, Inc*., 716 F.3d 510, 514 (9th Cir. 2013) (certifying regular rate claim because "[h]ere, unlike Comcast, if putative class members prove Medline's liability, damages will be calculated based on the wages each employee lost due to Medline's unlawful practices."); *Alonzo v. Maximus, Inc.*, Case No. 2:08-CV-06755-JST (MANx), 2011 WL 2437444 at *13 (C.D. Cal. June 17, 2011) (overtime pay claim based on the alleged miscalculation of the regular rate of pay certified under Rule 23(b)(3)).

## C.   Rule 23(a)(3) Typicality Is Satisfied

The claims of the proposed Class Representative are typical of those held by other Class members.  Plaintiff was employed by Defendant as a non-exempt employee in California from approximately February 2013 to May 20, 2014.  Haines Decl., ¶ 11.  Plaintiff worked "major fraction" shifts of durations between 6.01 and 7.99 hours without receiving second rest periods, was subject to Defendant's meal period policies and practices, and earned bonuses, commissions and spiffs, while working overtime hours in corresponding time periods.  *Id*.  The value of the incentive pay was not included in his regular rate of pay for premium pay purposes, and Plaintiff did not receive all wages owed at the time of his termination, and received deficient wage statements throughout his employment.  *Id.*  According to the Ninth Circuit, "[u]nder [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Because the proposed Settlement Class will consist only of other non-exempt employees like Plaintiff, and because Plaintiff's claims

stem from Defendant's uniform policies and practices as to the claims, typicality is satisfied.

### D. Rule 23(a)(4) Adequacy Is Satisfied

Plaintiff is also adequate as a class representative under Rule 23(a)(4). To satisfy this requirement, the proposed class representative and their counsel must not have conflicts of interest with the proposed classes, and must vigorously prosecute the action on behalf of the classes. *See Hanlon*, *supra*, 150 F.3d at 1020. Here, there is no conflict of interest between the proposed Class Representative and the proposed Settlement Class. With respect to adequacy of counsel, Plaintiff's counsel vigorously litigated this case, expended considerable resources, undertook an extensive analysis of the claims and potential damages, and have no conflicts with the Settlement Class members. As set forth in the concurrently filed Declarations of Paul K. Haines, Hernaldo J. Baltodano and Fletcher W. Schmidt, Plaintiff's counsel are adequate to represent the proposed Settlement Class given their qualifications, skills, and experience. *See* Haines Decl., ¶¶ 1-10; Baltodano Decl., ¶¶ 1-12; Schmidt Decl., ¶¶ 1-9.

### E. Rule 23(b)(3) Predominance Is Satisfied For Settlement Purposes

Predominance tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by [class action] representation." *See Amchem v. Windsor*, 521 U.S. 591, 623 (1997). Because Plaintiff seeks certification for settlement purposes only, however, manageability of trial need not be considered. *See Id.* at 620. As the Subclasses are defined to only include those employees who were allegedly injured by Defendant's challenged uniform policies and practices, the proposed Settlement Class is "sufficiently cohesive" since a "common nucleus of facts" and "potential legal remedies" dominates. *See Hanlon*, *supra*, 150 F.3d at 1022. Plaintiff asserts that this common nucleus of facts includes, for example, Defendant's delay in rectifying its miscalculation of the regular rate of pay,

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1  allegedly defective wage statements, and allegedly unlawful meal and rest period

2  policies, each of which predominate over individual questions.

3  **V.    THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS**

4  Due process requires that notice be provided to class members by the best

5  reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156

6  (1974).  Notice is satisfactory if it "generally describes the terms of the settlement

7  in sufficient detail to alert those with adverse viewpoints to investigate and to come

8  forward and be heard." *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d

9  566, 575 (9th Cir. 2004).  Here, Plaintiff proposes that the settlement be

10  administered by CPT Group, Inc., an experienced class action settlement

11  administrator, which will mail the proposed Class Notice and FLSA Opt-In Form

12  to the Settlement Class. *See* Declaration of Julie Green and attached exhibits.  The

13  proposed Class Notice advises Class members of the key terms of the Settlement

14  and uniform 60-day deadline to opt-out, file an objection, or (in the case of FLSA

15  Overtime Subclass members who have not already opted-in only) to opt-in to the

16  Settlement, provides a summary of the alleged claims, explains the recovery

17  formula and expected recovery amount for each member of the Settlement Class,

18  provides contact information for Class Counsel, and notifies them of the date for

19  the final approval hearing.  *Id.*

20  **VI.   CONCLUSION.**

21  Based on these reasons, Plaintiff respectfully requests that the Court grant

22  this Motion.

23                              Respectfully submitted,

24  Dated:  October 12, 2015        BOREN, OSHER & LUFTMAN LLP

25

26                  By:   __/s/ Paul K. Haines_____

27                        Paul K. Haines, Esq.
                         Attorneys for Plaintiff, the Classes and
28                        Aggrieved Employees