UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANNDEN BOWER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CYCLE GEAR, INC,<br><br>　　　　　Defendant. | Case No. 14-cv-02712-HSG<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 63 |

Pending before the Court is Plaintiff Lannden Bower's Motion for Preliminary Approval of Class Action Settlement. Dkt. No. 63 ("Mot."). After careful consideration of the settlement agreement and the parties' arguments, the Court GRANTS Plaintiff's motion for preliminary approval.

**I.      BACKGROUND**

　　**A.      Litigation History**

Defendant Cycle Gear, Inc. is a retail company that sells motorcycle helmets, parts, and accessories. This action began on June 11, 2014, when Plaintiff, a former employee of Defendant, filed a class, collective, and representative action complaint alleging violations of the Fair Labor Standards Act ("FLSA") and various California wage and hour laws. *See* Dkt. No. 1. In his complaint, Plaintiff alleges eight causes of action on behalf of himself and six subclasses of current and former employees of Defendant during the relevant statute of limitations time periods: (1) Failure to Pay Overtime Wages (Cal. Labor Code §§ 204, 510, 558, 1194, and 1198, and Wage Order 7); (2) FLSA Violations (29 U.S.C. § 207); (3) Meal Period Violations (Cal. Labor Code §§ 226.7, 512, and 558, and Wage Order 7); (4) Rest Period Violations (Cal. Labor Code §§ 226.7, 516, and 558, and Wage Order 7); (5) Wage Statement Penalties (Cal. Labor Code

§ 226); (6) Waiting Time Penalties (Cal. Labor Code §§ 201-203); (7) Unfair Competition (Cal. Bus. & Prof. Code § 17200 *et seq.*); and (8) penalties under the Private Attorneys General Act ("PAGA") (Cal. Labor Code § 2698 *et seq.*).

The parties participated in private mediation with experienced class action mediator Jeff Ross on January 7, 2015, but were unable to reach a resolution. The parties then exchanged requests for discovery, conducted depositions, and retained expert witnesses.

On May 11, 2015, the Court conditionally certified a FLSA collective action of "all hourly non-exempt employees employed by Defendant from May 11, 2012 to the present." Dkt. No. 45. On June 30, 2015, Plaintiff filed a motion to certify four classes under Federal Rule of Civil Procedure 23. Dkt. No. 48. However, before the hearing on the motion for class certification, the parties participated in a second private mediation on August 11, 2015 with experienced class action mediator David Rotman and reached an agreement. Accordingly, the Court vacated the hearing on the motion for class certification. Dkt. No. 61.

### B. Overview of the Proposed Settlement

Following the settlement in principle, the parties executed a Class Action Settlement Agreement and Stipulation ("Settlement Agreement"). Dkt. No. 63-1, Ex. A. The key provisions of the Settlement Agreement are described below.

Payment Terms. In full settlement of the claims asserted in this lawsuit, Defendant agrees to pay a gross settlement sum ("GSS") of $1,900,000.

Allocation Method. Following the deduction of payments for any award of attorneys' fees and costs, settlement administration costs, any enhancement award to the named plaintiff, and penalties under the PAGA to the California Labor & Workforce Development Agency, the net settlement sum ("NSS") will be allocated as follows: (1) 5% to the FLSA Overtime Subclass, distributed on a pro rata basis according to the total number of workweeks worked during the period May 11, 2012 through the date of this Order; (2) 5% to the California Overtime Subclass, distributed on a pro rata basis according to the total number of workweeks worked during the period June 11, 2010 through the date of this Order; (3) 15% to the Rest Period Subclass, distributed on a pro rata basis according to the total number of workweeks worked during the

period June 11, 2010 through the date of this Order; (4) 25% to the Wage Statement Subclass, distributed on a pro rata basis according to the total number of workweeks worked during the period June 11, 2013 through the date of this Order; (5) 40% to the Waiting Time Subclass, distributed on a pro rata basis; (6) 5% to the Meal Period Subclass, distributed on a pro rata basis according to the total number of workweeks worked during the period June 11, 2010 through the date of this Order; and (7) 5% to the PAGA Aggrieved Employees Subclass, distributed on a pro rata basis.

<u>Attorneys' Fees and Costs.</u>  The Settlement Agreement authorizes class counsel to apply to the Court for an award of attorneys' fees and costs incurred in litigating this case.  Plaintiff's counsel requests an amount no greater than 30% of the GSS, plus reimbursement of costs and expenses, which counsel represents will be no more than $50,000.

<u>Incentive Payment.</u>  The Settlement Agreement provides that class counsel will petition the Court for approval of an incentive payment of no more than $10,000 to Plaintiff.

<u>Releases.</u>  Class members who do not opt out of the Settlement Agreement release all claims alleged in the complaint, or which could have been alleged based on the factual allegations in the complaint.  Plaintiff further agrees to release any and all claims against the Released Parties arising before the date of the final settlement approval hearing.

<u>Procedure for Claims and Settlement.</u>  Class members must opt in (for the FLSA Overtime Subclass only), opt out, or object to the settlement within sixty days.

<u>Unclaimed Settlement Funds.</u>  The Settlement Agreement is non-reversionary.  Any residual amounts will be paid out to the members of the settlement subclasses pursuant to the allocation set forth above.

<u>Objections.</u>  Any class members who do not opt out of the settlement may file an objection to the Settlement Agreement (or any of its terms).

## II.  CONDITIONAL CLASS CERTIFICATION

Class certification under Rule 23 is a two-step process.  First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy.  "Class certification is proper only if the trial court has concluded, after a 'rigorous

analysis,' that Rule 23(a) has been satisfied." *Wang v. Chinese Daily News, Inc.*, 709 F.3d 829, 833 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). Second, a plaintiff must establish that one of the bases for certification in Rule 23(b) is met. Here, by invoking Rule 23(b)(3), Plaintiff must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rule 23(a) and at least one of the three requirements under Rule 23(b) are met. *See Wal-Mart*, 131 S. Ct. at 2551.

### A. Rule 23(a)(1)—Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The proposed settlement subclasses encompass approximately 2,262 potential members. Moreover, no subclass has fewer than 259 members. The Court finds that numerosity is satisfied here because joinder of all the estimated class members would be impracticable.

### B. Rule 23(a)(2)—Commonality

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For the purposes of Rule 23(a)(2), even a single common question is sufficient. *Wal-Mart*, 131 S. Ct. at 2556. The common contention, however, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original) (citation omitted).

The Court finds that the proposed class satisfies the commonality requirement because, at a minimum, the existence of Defendant's alleged policies and practices concerning wage statement calculations and meal break/rest periods implicate the class members' claims as a whole.

### C. Rule 23(a)(3)—Typicality

In certifying a class, a court must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal quotation marks omitted).

The Court finds that Plaintiff is typical of the class he seeks to represent. Like the rest of the proposed settlement class members, Plaintiff alleges that he worked for Defendant during the time period when Defendant allegedly carried out the misconduct alleged in this action, and that he worked longer shifts without receiving second rest periods, was subject to Defendant's meal period policies and practices, and worked overtime during that time.

### D. Rule 23(a)(4)—Adequacy of Representation

"The adequacy of representation requirement . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). The requirement "'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982)). Among other purposes, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 158 n.13. Adequacy of representation requires two legal determinations: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)

No evidence in the record suggests that Plaintiff or proposed class counsel have a conflict

5

of interest with other class members. Proposed class counsel has substantial experience prosecuting employment class actions. *See* Dkt. No. 63-1 ¶¶ 3-9; Dkt. No. 63-2 ¶¶ 2-11; Dkt. No. 63-3 ¶¶ 2-7. The Court finds that proposed class counsel and Plaintiff have prosecuted this action vigorously on behalf of the class, and will continue to do so. The adequacy requirement is therefore satisfied.

### E. Rule 23(b)(3)—Predominance and Superiority

To certify a Rule 23 damages class, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (citation omitted).

Here, the Court finds that—for purposes of settlement—the common questions raised by Plaintiff's claims predominate over questions affecting only individual members of the proposed class. In particular, Plaintiff alleges that Defendant enforced meal break/rest period policies that violated California law, and improperly performed wage statement calculations. Whether these allegations have a basis in fact is a common question that would largely resolve the claims of all class members. The predominance requirement is therefore satisfied.

Next, "[t]he superiority inquiry under Rule 23(b)(3) requires the Court to determine whether the objectives of the particular class action procedure will be achieved in the particular case." *Id.* at 1023. Here, because common legal and factual questions predominate over individual ones, and taking into account the size of the proposed class, the Court finds that the judicial economy achieved through common adjudication makes a class action a superior method for adjudicating the claims of the proposed class.

Finally, while not enumerated in Rule 23, "courts have recognized that 'in order to

maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'" *Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012) (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)); *see also Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1071, n.4 (9th Cir. 2014) (referring, in dicta, to the "threshold ascertainability test"). "[A] class definition is sufficient if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *Vietnam Veterans*, 288 F.R.D. at 211 (internal quotation marks omitted).

Courts have considered at least three types of "ascertainability" concerns when determining whether class certification is appropriate: (1) whether the class can be ascertained by reference to objective criteria; (2) whether the class includes members who are not entitled to recovery; and (3) whether the putative named plaintiff can show that he will be able to locate absent class members once a class is certified. *See Lilly v. Jamba Juice Co.*, 2014 WL 4652283, at *3-4 (N.D. Cal. Sept. 18, 2014). The proposed class in this case does not present any of these concerns. Defendant will provide the claims administrator the name, last known address, social security number, and applicable employment dates for each of the estimated 2,262 class members. Mot. at 23. This information will allow the claims administrator to identify and locate class members with sufficient confidence to satisfy the ascertainability requirement.

### F.     Appointment of Class Representatives and Class Counsel

Because the Court finds that Plaintiff meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints him as class representative. When a court certifies a class, the court must appoint class counsel and must consider:

>   (i)    the work counsel has done in identifying or investigating potential claims in the action;
>   (ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>   (iii)  counsel's knowledge of the applicable law; and
>   (iv)   the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

7

Plaintiff's counsel has prosecuted this action by: (1) investigating class members' potential claims; (2) propounding and reviewing discovery; (3) conducting depositions; (4) retaining an expert economist to analyze extensive payroll data; (5) successfully bringing a motion for conditional certification of a FLSA collective action; (6) participating in two full-day mediations; (7) negotiating this Settlement Agreement; and (8) briefing the instant motion for preliminary approval. Plaintiff's counsel has substantial prior experience prosecuting employment actions. *See* Dkt. No. 63-1 ¶¶ 3-9; Dkt. No. 63-2 ¶¶ 2-11; Dkt. No. 63-3 ¶¶ 2-7. For these reasons, the Court will appoint Paul K. Haines and Fletcher W. Schmidt of Boren, Osher & Luftman LLP, and Hernaldo J. Baltodano of Baltodano & Baltodano LLP, as class counsel pursuant to Federal Rule of Civil Procedure 23(g).

### III. PRELIMINARY APPROVAL

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a court approves a settlement it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).

In general, the district court's review of a class action settlement is "extremely limited." *Hanlon*, 150 F.3d at 1026. However, where the parties reach a class action settlement prior to class certification, courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotations omitted). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

8

At the preliminary approval stage, the Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *see also Alvarado v. Nederend*, No. 08-cv-01099-OWW, 2011 WL 90228, at *5 (E.D. Cal. Jan. 11, 2011) (granting preliminary approval of settlement in wage and hour class action); Joseph M. McLaughlin, McLaughlin on Class Actions: Law and Practice § 6.6 (7th ed. 2011) ("Preliminary approval is an initial evaluation by the court of the fairness of the proposed settlement, including a determination that there are no obvious deficiencies such as indications of a collusive negotiation, unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys . . . ."). The Court considers the settlement as a whole, rather than its components, and lacks the authority to "delete, modify or substitute certain provisions." *Officers for Justice v. Civ. Serv. Comm'n of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982). Rather, "[t]he settlement must stand or fall in its entirety." *Id*.

### A.     The Settlement Process

The first factor the Court examines is the means by which the parties arrived at the settlement. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (citation omitted). Here, the parties reached their settlement after two full-day mediation sessions before impartial and experienced mediators, which strongly suggests the absence of collusion or bad faith by the parties or counsel. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010); *Satchell v. Fed. Express Corp.*, No. 03-cv-2659-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

### B.     Obvious Deficiencies

The second factor the Court considers is whether there are obvious deficiencies in the

Settlement Agreement.  The Court finds no obvious deficiencies in the Settlement Agreement.

### C.  Preferential Treatment

Under the third factor, the Court examines whether the Settlement Agreement provides preferential treatment to any class member.  The proposed plan of allocation based on either (1) the number of workweeks worked during the relevant statutory time period, or (2) a purely *pro rata* division, appears to compensate class members in a manner generally proportionate to the harm they suffered on account of Defendant's alleged misconduct.  While the Settlement Agreement authorizes Plaintiff to seek an incentive award of $10,000 for his role as named plaintiff in this lawsuit, the Court will ultimately determine whether he is entitled to such an award and the reasonableness of the amount requested.  The Ninth Circuit has recognized that incentive awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable.  *See Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968-69 (9th Cir. 2009).

### D.  Whether the Settlement Falls Within the Range of Possible Approval

Finally, the Court must consider whether the Settlement Agreement falls within the range of possible approval.  "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080) (internal quotations omitted).  Additionally, to determine whether a settlement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that ultimately inform final approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.  *See Churchill Vill. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted).  Although the Court undertakes a more in-depth investigation of the foregoing factors at the final approval stage, these factors

inform whether the Settlement Agreement falls within the "range of possible approval."

The Court first considers the class' expected recovery balanced against the value of the settlement offer, taking into account the strength of the plaintiff's case. The settlement provides for the payment of $1,900,000, which, based on counsel's representations, is approximately 64% of Defendant's maximum potential exposure. *See* Mot. at 11-15. Plaintiff argues that this is a fair compromise within the range of reasonableness given the risks of non-certification, discretionary reduction of damages by the Court, and dismissal on the merits. *Id*. The Court agrees. The parties' submissions evidence that Defendant has several significant defenses to liability that could substantially reduce the class members' recovery (or preclude it entirely). Additionally, Plaintiff would face obstacles to class certification. The 64% figure is more than sufficient for the Court to grant preliminary approval given the merits of Plaintiff's claims.

Second, the settlement amount is adequate given the expense, complexity, and duration of further litigation. In order to prevail in this action, Plaintiff would be required to successfully move for class certification under Rule 23 and collective certification under the FLSA, survive summary judgment, and receive a favorable verdict capable of withstanding a potential appeal. The risks and costs associated with class action litigation weigh strongly in favor of settlement.

The third factor concerning whether class certification can be maintained through trial also weighs in favor of settlement. Certifying various subclasses encompassing a total of 2,262 employees presents complex issues that could undermine certification at many different stages of the litigation.

Fourth, the $1,900,000 settlement amount, which constitutes 64% of the class members' maximum potential exposure, is reasonable given the stage of the proceedings and the defenses asserted in this action.

Fifth, the parties have undertaken sufficient discovery to inform their view of the reasonableness of the Settlement Agreement.

The sixth factor takes into account counsel's experience and their respective views of the Settlement Agreement. The Court has previously evaluated class counsel's qualifications and experience and concluded that counsel is qualified to represent the class' interests in this action.

1  The Court notes, however, that courts have taken divergent views as to the weight to accord

2  counsel's opinions. *Compare Carter v. Anderson Merch., LP*, 2010 WL 1946784, at *8 (C.D. Cal.

3  May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F.

4  Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements, as

5  parties to class actions and their counsel often have pecuniary interests in seeing the settlement

6  approved."). The Court finds that this factor tilts in favor of approval, even though the Court

7  affords only modest weight to the views of counsel.

8  The seventh factor is inapplicable because there is no governmental participant in this case.

9  Eighth, because the class has not yet been formally notified of the settlement, the Court

10  cannot undertake any evaluation of class members' reaction to the settlement, including the

11  number and substance of any objections.

12  Having weighed these eight factors, the Court finds that the Settlement Agreement falls

13  within the range appropriate for preliminary approval.

## IV. PROPOSED CLASS NOTICE AND NOTIFICATION PROCEDURES

15  The class notice in a Rule 23(b)(3) class action must comport with the requirements of due

16  process. "The plaintiff must receive notice plus an opportunity to be heard and participate in

17  litigation, whether in person or through counsel." *Philips Petroleum Co. v. Shutts*, 472 U.S. 797,

18  812 (1985). The notice must be "the best practicable, reasonably calculated, under all the

19  circumstances, to apprise interested parties of the pendency of the action and afford them an

20  opportunity to present their objections." *Id.* (internal quotation marks omitted). "The notice

21  should describe the action and the plaintiffs' rights in it." *Id.* Rule 23(c)(2)(B) provides, in

22  relevant part:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

28  Additionally, "an absent plaintiff [must] be provided with an opportunity to remove himself from

12

1   the class by executing and returning an 'opt out' or 'request for exclusion' form to the court."

2   *Philips Petroleum Co.*, 472 U.S. at 812.

3         Plaintiff proposes CPT Group, Inc. ("CPT Group") as the settlement administrator for the class. The Court finds that CPT Group is qualified to perform the tasks associated with administering the notice and claims procedures outlined in the Settlement Agreement and therefore approves CPT Group as the settlement administrator. CPT Group will, among other tasks, provide notice, calculate awards, process requests for exclusion and objections, and mail class members their settlement awards.

      The amended proposed notices, attached as exhibits A and B to Dkt. No. 66, contain all the information required under the Federal Rules and, accordingly, the Court finds that the notice plan comports with due process requirements. The Court agrees with the parties that all FLSA Overtime Subclass members should be required to opt in order to participate in the settlement. *See* Dkt. No. 66 ¶ 3. It is unclear from Plaintiff's motion and supplemental declaration whether the proposed notice attached as exhibit A will be sent to members of the FLSA Overtime Subclass. *Compare* Settlement Agreement ¶ 6 (identifying the exhibit as "the Rule 23 Class Notice"), *with* Dkt. No. 66 ¶ 2 (identifying the exhibit as "class notice to the California FLSA Class Members"). If exhibit A will be sent to members of the FLSA Overtime Subclass, the parties shall modify it to make clear that those members must opt in to participate in the settlement and describe the opt-in procedures. If exhibit A will not be sent to members of the FLSA Overtime Subclass, the parties should consider whether paragraph (a) should be unbolded to reduce confusion.

### V. NOTICE OF MOTION AND AWARD OF ATTORNEYS' FEES AND COSTS

The settlement notices inform class members that the Settlement Agreement "will pay" class counsel an award of attorneys' fees in the amount of 30% of the GSS, plus their out-of-pocket expenses up to $50,000. Class counsel shall clarify that the amount of attorneys' fees and costs awarded will be determined by the Court by substituting the following language in the opening paragraph of Section II of the notices:

> Under the terms of the Settlement Agreement, Class Counsel will request the Court to award attorneys' fees in this Action in an amount not to exceed 30% of the GSS. Class Counsel will also

13

request the Court to award attorneys' costs in this Action in an amount not to exceed $50,000 from the GSS.  Finally, Class Counsel will request the Court to award an enhancement award of no more than $10,000 to Plaintiff from the GSS, to compensate him for his work in initiating the lawsuit, assisting Class Counsel in its prosecution, and in exchange for a release of all claims known and unknown against Defendant.

Additionally, to enable class members to review class counsel's motion, class counsel shall include language in the settlement notices indicating the deadline for filing the attorneys' fees motion, specifically stating the deadline for any class member objections to the fees motion, and informing class members that the motion and supporting materials will be available for viewing on class counsel's website.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010) (holding that under Rule 23(h), class members must be given a full and fair opportunity to examine and object to attorneys' fees motion).  That motion shall be filed with the Court and posted on class counsel's website not later than 20 days before class members' objections are due.

## VI. SETTLEMENT APPROVAL SCHEDULE

The parties are directed to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court along with a proposed order within seven days of the date of this Order.

| Event | Date |
|---|---|
| Deadline to mail claim packets | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Last date to file objections | |
| Last date to submit claims | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

14

**VII.   CONCLUSION**

For the reasons stated above, the Court GRANTS Plaintiff's motion for preliminary approval of class action settlement. The parties are directed to comply with the instructions provided in this Order.

**IT IS SO ORDERED.**

Dated: December 8, 2015

*[signature]*
HAYWOOD S. GILLIAM, JR.
United States District Judge