UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANNDEN BOWER,<br><br>  Plaintiff,<br><br>v.<br><br>CYCLE GEAR, INC,<br><br>  Defendant. | Case No. 14-cv-02712-HSG<br><br>**ORDER GRANTING MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND NAMED PLAINTIFF INCENTIVE PAYMENT**<br><br>Re: Dkt. Nos. 71, 77 |

Pending before the Court are two motions filed by Plaintiff Lannden Bower. Plaintiff moves for (1) final approval of the class action settlement, Dkt. No. 77; and (2) an award of attorneys' fees, costs, and named plaintiff incentive payment, Dkt. No. 71. Defendant Cycle Gear, Inc. does not oppose the motions. Dkt. Nos. 72, 78. The Court held a final fairness hearing on both motions on June 2, 2016. Dkt. No. 80. For the reasons stated below and at the hearing, the Court GRANTS Plaintiff's motions.

**I.   BACKGROUND**

  **A.   Litigation History**

Defendant Cycle Gear, Inc. is a retail company that sells motorcycle helmets, parts, and accessories. This action began on June 11, 2014, when Plaintiff, a former employee of Defendant, filed a class, collective, and representative action complaint alleging violations of the Fair Labor Standards Act ("FLSA") and various California wage and hour laws. *See* Dkt. No. 1. In his complaint, Plaintiff alleges eight causes of action on behalf of himself and six subclasses of Defendant's current and former employees during the relevant statute of limitations time periods: (1) Failure to Pay Overtime Wages (Cal. Labor Code §§ 204, 510, 558, 1194, and 1198, and Wage Order 7); (2) FLSA Violations (29 U.S.C. § 207); (3) Meal Period Violations (Cal. Labor Code

1   §§ 226.7, 512, and 558, and Wage Order 7); (4) Rest Period Violations (Cal. Labor Code
2   §§ 226.7, 516, and 558, and Wage Order 7); (5) Wage Statement Penalties (Cal. Labor Code
3   § 226); (6) Waiting Time Penalties (Cal. Labor Code §§ 201-203); (7) Unfair Competition (Cal.
4   Bus. & Prof. Code § 17200 *et seq.*); and (8) penalties under the Private Attorneys General Act
5   ("PAGA") (Cal. Labor Code § 2698 *et seq.*).

The parties participated in private mediation with experienced class action mediator Jeff Ross on January 7, 2015, but were unable to reach a resolution. The parties then exchanged requests for discovery, conducted depositions, and retained expert witnesses.

On May 11, 2015, the Court conditionally certified a FLSA collective action of "all hourly non-exempt employees employed by Defendant from May 11, 2012 to the present." Dkt. No. 45. On June 30, 2015, Plaintiff filed a motion to certify four classes under Federal Rule of Civil Procedure 23. Dkt. No. 48. However, before the hearing on the motion for class certification, the parties participated in a second private mediation on August 11, 2015, with experienced class action mediator David Rotman and reached an agreement. Accordingly, the Court vacated the hearing on the motion for class certification. Dkt. No. 61.

Plaintiff filed a motion for preliminary approval of settlement on October 12, 2015. Dkt. No. 63. The Court held a hearing on Plaintiff's motion for preliminary approval of settlement on November 19, 2015, Dkt. No. 65, and granted preliminary approval on December 11, 2015, Dkt. Nos. 67, 69.

**A. Overview of the Proposed Settlement**

The parties have submitted an executed Class Action Settlement Agreement and Stipulation ("Settlement Agreement"). Dkt. No. 63-1, Ex. A. The key provisions of the Settlement Agreement are described below.

Payment Terms. In full settlement of the claims asserted in this lawsuit, Defendant agrees to pay a gross settlement sum ("GSS") of $1,900,000.

Allocation Method. Following the deduction of payments for any award of attorneys' fees and costs, settlement administration costs, any enhancement award to the named plaintiff, and penalties under the PAGA to the California Labor & Workforce Development Agency, the net

settlement sum ("NSS") will be allocated as follows: (1) 5% to the FLSA Overtime Subclass, distributed on a pro rata basis according to the total number of workweeks worked during the period May 11, 2012, through December 8, 2015; (2) 5% to the California Overtime Subclass, distributed on a pro rata basis according to the total number of workweeks worked during the period June 11, 2010, through December 8, 2015; (3) 15% to the Rest Period Subclass, distributed on a pro rata basis according to the total number of workweeks worked during the period June 11, 2010, through December 8, 2015; (4) 25% to the Wage Statement Subclass, distributed on a pro rata basis according to the total number of workweeks worked during the period June 11, 2013, through December 8, 2015; (5) 40% to the Waiting Time Subclass, distributed on a pro rata basis; (6) 5% to the Meal Period Subclass, distributed on a pro rata basis according to the total number of workweeks worked during the period June 11, 2010, through December 8, 2015; and (7) 5% to the PAGA Aggrieved Employees Subclass, distributed on a pro rata basis.

Attorneys' Fees and Costs.  The Settlement Agreement authorizes Class Counsel to apply to the Court for an award of attorneys' fees and costs incurred in litigating this case.  Class Counsel requests an amount no greater than 30% of the GSS, plus reimbursement of costs and expenses, which Class Counsel represents will be no more than $50,000.

Incentive Payment.  The Settlement Agreement provides that Class Counsel will petition the Court for approval of an incentive payment of no more than $10,000 to Plaintiff.

Releases.  Class members who do not opt out of the Settlement Agreement release all claims alleged in the complaint, or which could have been alleged based on the factual allegations in the complaint.  Plaintiff further agrees to release any and all claims against the Released Parties arising before the date of the final settlement approval hearing.

Procedure for Claims and Settlement.  Class members must opt in (for the FLSA Overtime Subclass only), opt out, or object to the settlement within sixty days.

Unclaimed Settlement Funds.  The Settlement Agreement is non-reversionary.  Any residual amounts will be paid out to the members of the settlement subclasses pursuant to the allocation set forth above.

Objections.  Any class members who do not opt out of the settlement may file an objection

to the Settlement Agreement (or any of its terms).

## II. DISCUSSION

### A. Motion for Final Approval of the Class Action Settlement

#### 1. Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may grant final approval to class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assess whether a proposed settlement comports with Rule 23(e), a district court must "determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). To make this determination, courts consider the following factors:

> the strength of the plaintiff's case; the risk expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id*. No single factor is the "most significant." *Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1026.

#### 2. Adequacy of Notice

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Before a court may finally approve a proposed class settlement, it must "direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id*. 23(e)(1). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each individual actually receive notice. *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010).

4

1    The Court finds that the notice plan previously approved by the Court, Dkt. Nos. 67, 69,
2    was implemented with minor timeline changes and complies with Rule 23(c)(2)(B). On February
3    19, 2016, Defendant provided the Claims' Administrator, CPT Group, Inc., with the finalized class
4    data for 1,058 Class Members, including each member's name, last known mailing address, and
5    dates of employment. Dkt. No. 77-1 ¶ 5. CPT updated the class data using the National Change
6    of Address Database, *id.* ¶ 6, and mailed the Notice Packets to each of the 1,058 Class Members
7    on February 22, 2016, *id.* ¶ 7. On March 4, 2016, CPT mailed Notice Packets to an additional 836
8    Class Members, who the parties identified and confirmed as FLSA Only Class Members. *Id.* ¶ 8.
9    One hundred forty-five Notice Packets were returned by the United States Post Office, and CPT
10   re-mailed one hundred nineteen Notice Packets. *Id.* ¶¶ 9-10. Ultimately, CPT was unable to find
11   deliverable addresses for thirty-four Class Members, or 1.79% of the class. *Id.* ¶ 10.

12   CPT has received one currently deficient request for exclusion from the California
13   Overtime Subclass and five deficient responses due to a missing social security number and/or
14   missing signature. *Id.* ¶¶ 11, 13. CPT has sent letters requesting cures to Class Members who
15   returned deficient responses. *Id.* CPT has received zero disputes, zero late responses, and zero
16   objections. *Id.* ¶¶ 12, 15, 16. Only one individual from the California Settlement Classes has
17   requested exclusion, constituting a 99.88% participation rate for the California Settlement Class
18   Members. *Id.* ¶ 17. Furthermore, two hundred seventy-three members of the FLSA Settlement
19   Subclass either filed a Consent Form in 2015 or an Opt-in Form in 2016, resulting in a 15.20%
20   opt-in rate. *Id.* ¶ 18.

21   In light of these facts, the Court finds that the notice and notice procedures complied with
22   the requirements of Rule 23(e).

### 3. Fairness, Adequacy, and Reasonableness of Settlement

24   Having found the notice procedures adequate under Rule 23(e), the Court next considers
25   whether the entire settlement comports with Rule 23(e).

#### a. Strength of Plaintiff's Case

27   The first factor for the Court to consider is the strength of Plaintiff's case. This action
28   reached settlement before the Court had an opportunity to fully consider the merits of the claims.

1  However, the parties' submissions evidence that Defendant has several significant defenses to
2  liability that could substantially reduce the class members' recovery (or preclude it entirely).
3  Additionally, Plaintiff would face obstacles to class certification.  It is not clear that Plaintiff
4  successfully would overcome Defendant's opposition to class certification or any motions for
5  summary judgment.  This factor weighs in favor of approval.

###    b.   Risk, Expense, Complexity, and Likely Duration of Further Litigation

The Court next considers the risk, expense, complexity, and likely duration associated with pursuing this case through the trial and appellate process.

In order to prevail in this action, Plaintiff would be required to successfully move for class certification under Rule 23 and collective certification under the FLSA, survive summary judgment, and receive a favorable verdict capable of withstanding a potential appeal.  The risks and costs associated with class action litigation weigh strongly in favor of settlement.  *See Rodriguez v. W. Publ'g Co.*, 563 F.3d 948, 966 (9th Cir. 2009) (recognizing that difficulties and risks in litigating weigh in favor of approving a class settlement).

###    c.   Risk of Maintaining Class Action Status

In considering the third factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed.  Certifying various subclasses encompassing a total of 2,262 employees presents complex issues that could undermine certification at many different stages of the litigation.  Accordingly, this factor also weighs in favor of settlement.

###    d.   Amount Offered in Settlement

The fourth factor that the Court considers is the amount offered in settlement.  The $1,900,000 settlement amount, which constitutes 64% of Defendant's maximum potential exposure, is reasonable given the stage of the proceedings and the defenses asserted in this action.

###    e.   Extent of Discovery Completed and State of Proceedings

In analyzing the fifth factor, the Court reviews the extent of discovery completed and the state of proceedings.  The parties have engaged in written discovery, Plaintiff has successfully moved for conditional certification of his FLSA Overtime Subclass, and the parties have taken

1  several depositions.  As such, the Court concludes that the parties have undertaken sufficient

2  discovery to inform their view of the reasonableness of the Settlement Agreement.

### f. Experience and Views of Counsel

The sixth factor takes into account counsel's experience and their respective views of the Settlement Agreement.  The Court has previously evaluated Class Counsel's qualifications and experience and concluded that counsel is qualified to represent the class' interests in this action.  The Court notes, however, that courts have taken divergent views as to the weight to accord counsel's opinions.  *Compare Carter v. Anderson Merch., LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements, as parties to class actions and their counsel often have pecuniary interests in seeing the settlement approved.").  The Court finds that this factor tilts in favor of final approval, even though the Court affords only modest weight to the views of counsel.

### g. Government Participation

No governmental entity participated in this matter; this factor, therefore, is irrelevant to the Court's analysis.

### h. Reaction of Class Members

The reaction of the Class Members supports final approval.  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

The Notice, which was served on each Class Member in accordance with the methods approved by the Court, advised the Class of the requirements regarding objections and exclusions.  As discussed, only one individual from the California Settlement Classes has requested exclusion, constituting a 99.88% participation rate for the California Settlement Class Members.  Dkt. No. 77-1 ¶ 17.  Furthermore, two hundred seventy-three members of the FLSA Settlement Subclass

1  either filed a Consent Form in 2015 or an Opt-in Form in 2016, resulting in a 15.20% opt-in rate.
2  *Id.* ¶ 18.  CPT has received zero disputes, zero late responses, and zero objections.  *Id.* ¶¶ 12, 15,
3  16.  The Court finds that the absence of objections and the single request for exclusion indicate
4  overwhelming support among the Class Members, constitute a positive reaction, and weigh in
5  favor of approval.  *See*, *e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir.
6  2004) (affirming settlement where 45 of approximately 90,000 class members objected);
7  *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal.
8  Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

### i. Arm's-Length Negotiations

Finally, the Court considers whether the parties reached this settlement as a result of good faith, arm's-length negotiations rather than as a result of fraud or collusion.  "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."  *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (citation omitted).  Here, the parties reached their settlement after two full-day mediation sessions before impartial and experienced mediators, which strongly suggests the absence of collusion or bad faith by the parties or counsel.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010); *Satchell v. Fed. Express Corp.*, No. 03-cv-2659-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Considering the extent of discovery and investigation leading up to two full-day mediation sessions, the nature and length of the negotiations process, and the benefit conveyed to the Class Members in light of the risks of continued litigation, the Court is satisfied that the Settlement Agreement is not the product of collusion or fraud, but rather is the result of a successful arm's-length negotiation.

\*   \*   \*

After considering and weighing all of the above factors, the Court finds that the Settlement Agreement is fair, adequate, and reasonable, and that the settlement Class Members received adequate notice.  Accordingly, Plaintiff's motion for final approval of class action settlement is

GRANTED.

### B. Attorneys' Fees and Costs

#### 1. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Additionally, class counsel is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks omitted).

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino*, 290 F.3d at 1047. "[T]he choice between lodestar and percentage calculation depends on the circumstances, but [ ] 'either method may . . . have its place in determining what would be reasonable compensation for creating a common fund.'" *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. *Vizcaino*, 290 F.3d at 1050-51.

Under the percentage-of-recovery method, 25% of a common fund is the benchmark award of attorneys' fees. *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers*, 904 F.2d at 1311.

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (*citing Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved factors that may be relevant to Court's determination: (1)

the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See id.* at 1048-1050.

### 2. Reasonableness of Attorneys' Fees Request

Here, the parties have agreed to a GSS of $1,900,000, of which Class Counsel requests $570,000, or 30%, in fees. Dkt. No. 71 at 1. Although the requested amount is above the 25% benchmark, the Court finds the request reasonable in light of the *Vizcaino* factors and the lodestar cross-check.

First, the results obtained for the Class Members were very favorable. The average recovery for California Class Members is approximately $1,250.12, and the average recovery to members of the FLSA Overtime Subclass is approximately $183.70. Dkt. No. 79 ¶ 13. Moreover, not a single Class Member objected to the settlement amount, and only one individual requested exclusion from the Settlement Agreement, evincing strong support for the settlement's outcome.

Second, as discussed, the risks of litigation were substantial. In order to prevail in this action, Plaintiff would be required to successfully move for class certification under Rule 23 and collective certification under the FLSA, survive summary judgment, and receive a favorable verdict capable of withstanding a potential appeal.

Third, Class Counsel has substantial experience prosecuting employment class actions, *see* Dkt. No. 71-1 ¶¶ 4-7; Dkt. No. 71-2 ¶¶ 3-11; Dkt. No. 71-3 ¶¶ 3-4, and the successful result involved significant commitment of effort and skill. In particular, Class Counsel spent several hundred billable hours (1) investigating Class Members' potential claims; (2) propounding and reviewing discovery; (3) conducting depositions; (4) retaining an expert economist to analyze extensive payroll data; (5) successfully bringing a motion for conditional certification of a FLSA collective action; (6) participating in two full-day mediations; (7) negotiating this Settlement Agreement; and (8) briefing the motions for preliminary and final approval.

Fourth, the contingent nature of the case and the financial burden assumed further justify a departure from the benchmark. Class Counsel have litigated this action for almost two years with no payment and no guarantee that the time expended would result in any recovery or recoupment

of costs. Dkt. No. 71-2 ¶ 25.

Finally, the Court considers whether the fee request is consistent with attorneys' fees awards made in similar cases, and concludes that it is. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n. 6 (9th Cir. 2002); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010).

The propriety of the requested fee award is further confirmed by a cross-check based on the lodestar. There is a total lodestar of $414,830, based on 777.2 hours worked. Dkt. No. 71-1 ¶ 14; Dkt. No. 71-2 ¶ 19. The requested fee of $570,000 results in a multiplier of 1.37, which supports the reasonableness of the settlement. *See McKenzie v. Fed. Exp. Corp.*, No. CV 10-02420 GAF PLAX, 2012 WL 2930201, at *10 (C.D. Cal. July 2, 2012) (lodestar with multipliers in the range of 2 to 4 was reasonable); *Perkins v. Linkedin Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255, at *15 (N.D. Cal. Feb. 16, 2016) (lodestar of 1.45 was reasonable).

Accordingly, the Court finds that the requested fee award is reasonable and GRANTS the request.

### 3. Class Counsel's Request for Costs

Class Counsel seeks reimbursement of $44,952.38 in expenses. Dkt. No. 71 at 23. Having reviewed the submitted records, including the itemized lists of expenditures incurred throughout litigation, the Court finds that the costs were reasonable and awards Class Counsel the requested amount.

## C. Incentive Award

Finally, Class Counsel requests an incentive award of $10,000 for named Plaintiff Lannden Bower. Dkt. No. 71 at 23-24.

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. The Court must evaluate the incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977. Many courts in the Ninth Circuit have held that a $5,000

11

incentive award is "presumptively reasonable." *See*, *e.g.*, *In re Toys-R-Us Delaware, Inc. FACTA Litig.*, 295 F.R.D. 438, 470–72 (C.D. Cal. 2014); *Harris v. Vector Marketing Corp.*, No. 08-cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount.").

Bower represents that in prosecuting this action, he spent approximately 50 hours gathering various employment and non-employment documents, reviewing and analyzing documents, attending several meetings with Class Counsel, preparing for two mediations and his deposition, and traveling to San Francisco to be deposed. Dkt. No. 71-4 ¶ 4. While the Court recognizes Bower's contributions, the Court sees no reason to depart from the "presumptively reasonable" award of $5,000. *See Harris*, 2012 WL 381202, at *7. Consequently, the Court GRANTS Bower an incentive payment of $5,000.

### III.   CONCLUSION

For the aforementioned reasons, the Court GRANTS the motions for (1) final approval of class action settlement and (2) attorneys' fees, costs, and incentive payment. Dkt. Nos. 71, 77. Class Counsel will receive $570,000 in attorneys' fees and $44,952.38 in costs. Named Plaintiff Lannden Bower is awarded an incentive payment of $5,000.

This action is hereby dismissed with prejudice, with each side to bear its own attorneys' fees and costs, except as provided in the Settlement Agreement. The parties shall file a proposed judgment within three days of the date of this Order.

**IT IS SO ORDERED.**

Dated: August 23, 2016

HAYWOOD S. GILLIAM, JR.
United States District Judge